UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRED KELSEY, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>PATRICK J. ALLIN, JILLIAN SHEEHAN, and TEXTURA CORPORATION,<br><br>    Defendants. | Civil Action No. 14-cv-7837<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Fred Kelsey, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Textura Corporation ("Textura" or the "Company") between August 7, 2013 and September 29, 2014 (the "Class Period"), inclusive, seeking to recover damages caused by Defendants' violations of federal

securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      During the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company did not charge general contractors and subcontractors as many basis points for using its Construction Payment Management (''CPM'') as it claimed; (2) the Company overstated its total addressable market; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

3.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

6.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as a substantial part of the conduct complained of herein occurred in this District and the Company conducts business in this district.

7.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

8. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Textura common stock at artificially inflated prices during the Class Period and has been damaged thereby.

9. Defendant Textura is a Delaware Corporation with its headquarters in Deerfield, Illinois, which provides on-demand business collaboration software solutions to the commercial construction industry in the United States and Canada. During the Class Period the Company's stock was traded on the NYSE under the symbol "TXTR."

10. Defendant Patrick J. Allin ("Allin") has been at all relevant times the Chairman and Chief Executive Officer of the Company.

11. Defendant Jillian Sheehan ("Sheehan") has been at all relevant times the Executive Vice President and Chief Financial Officer of the Company.

12. Defendants Allin and Sheehan are collectively referred to hereinafter as the "Individual Defendants."

## BACKGROUND

13. Defendant Textura's main product is CPM, which is an electronic invoicing and payment system that integrates all construction payment management process components including – billing, progress claims, lien waiver collection, statutory declarations, sub-tier waivers, compliance management and payments – into one seamless workflow.

14.     CPM accounts for 62.8%, 75.0% and 93.9% of the Company's revenue in fiscal 2013, 2012 and 2011, respectively.

## SUBSTANTIVE ALLEGATIONS

15.     The Class Period starts on August 7, 2013. On that day, Defendants held an earnings release and conference call for the quarter ended June 30, 2013 that was webcasted live and made available for replay on the Company's website. During the call, Defendant Allin stated the following concerning the Company's total addressable market:

> We believe that our solutions provide value for the commercial construction industry globally creating a total addressable market greater than $20 billion in annual revenue potential.

16.     On November 21, 2013, Defendants held an earnings release and conference call for quarter and fiscal year ended September 30, 2013, which was webcasted live and made available for replay on the Company's website. During the call, Defendant Allin stated the following concerning the CPM subcontractor usage fee:

> In the quarter we also announced a price increase for CPM subcontractor usage fees, which will become effective on all new projects brought on system after February 1st. It will take several years to realize the full revenue impact of the price increase. Therefore we are expecting a modest impact in 2014. Ultimately the price increase will add 2 to 3 basis points of revenue on subcontracted contract value.

17.     During the same call, Defendant Allin stated the following concerning the Company's total addressable market:

> We believe that our existing solutions provide value for the commercial construction industry globally, creating a total addressable market greater than $24 billion in annual potential revenue.

> * * * * *

> Last week we announced our agreement to acquire LATISTA, which will bring an entirely new set solutions with mobile capabilities. LATISTA offers a set of

integrated modules for project management in the field on mobile devices run on Apple, Windows and soon to come Android phones and tablets. These modules handle mission critical construction workflows including quality management, punch list safety, electronic commissioning and document management.

In essence LATISTA provides Textura with an outstanding new product offering that will allow us to capture a larger wallet share of technology spending in the construction industry. We see tremendous potential to integrate to LATISTA's solutions in to our offering and explore opportunities to introduce mobile capabilities into Textura's existing solutions. LATISTA will add an additional $4 billion in market opportunity, bringing the total addressable market to $28 billion.

18.     The presentation used as part of that call included the following slide concerning Company's total addressable market:



19.     On December 3, 2013, Defendants Allin and Sheehan made a presentation at the 2013 Credit Suisse Technology Conference held at The Phoenician in Scottsdale, Arizona, which

was webcasted live and made available for replay on the Company's website. The presentation included the following slide concerning Company's total addressable market:



20.     The presentation also included the following slide concerning the CPM subcontractor usage fee:

## Recent Highlights – Continuing to Execute our Strategy

**Strong Fiscal 4Q Results**

- **Accelerating revenue growth to 72%**
  - $23.7 billion construction value added – 158% growth
  - 10,114 client organizations – 94% growth
  - 6,225 total active projects – 32% growth

**CPM Penetration**

- **Key customer wins for CPM**
  - GH Phipps, Grunley Construction, Graycor Construction
  - Continued traction in Australia; expanded into Ireland

**Transformative Acquisition**

- **Latista propels Textura into mobile**
  - Leading provider of mobile-enabled construction solutions
  - $35 million transaction expected to close early December

**New Solutions**

- **BidOrganizer solution for contractors**
  - Efficiency solution for bid invitation process
  - Launched September 9th

**Pricing Leverage**

- **Announced CPM subcontractor price increase**
  - Effective on all new projects added after February 1, 2014
  - Full impact represents additional 2 – 3 bps of revenue on contract vs. 7 – 8 bps today

©2013 Textura Corporation

8

**Textura**

21.     On January 14, 2014, Defendants Allin and Sheehan made a presentation at the 16th Annual Needham Growth Conference held at The New York Palace Hotel in New York, New York, which was webcasted live and made available for replay on the Company's website. The presentation included the following slide concerning Company's total addressable market:



22.    The presentation also included the following slide concerning the CPM subcontractor usage fee:



23. On January 30, 2014, Defendants held an earnings release and conference call for the quarter ended December 31, 2013, which was webcasted live and made available for replay on the Company's website. During the call, Defendant Allin stated that:

> And finally we announced a price increase for CPM subcontractor usage fees which remains on track to become effective on all new projects brought on system after February 1. As a reminder it will take several years to realize the full revenue impact of the price increase as it flows through. Therefore we are expecting a modest impact in 2014 ultimately the price increase will add two to three basis points of revenue on subcontracted contract value.

24. During the same call, Defendant Sheeshan had the following exchange with analyst Bhavan Suri of William Blair & Company concerning the CPM usage fee:

**Bhavan Suri - William Blair & Company**
That's helpful. And then when you look at the price increase, I guess two quick questions, maybe this is more for Jillian, but how does that shift that sort of

minimum and maximum that you had said on the CPM basis? And then any pushback or is everyone been pretty okay with it overall?

**Jillian Sheehan**
Yes so as we said on the call that we expect over time that it will add another two to three basis points on what we're monetizing from the subcontractor and it is because we shifted the maximum hire per subcontract as well as increase the basis points. And I would say that we did go out when we were planning the price increase and we talk to our general contractor clients to get their feedback and their input before announcing it to the subcontractor community and we didn't receive much pushback there when we announced the price increase to the subcontractor out of our database of our 80,000 subcontractor organizations on system and we got a handful of emails and phone calls but it was more around clarification on how it will actually work and get implemented but not a lot of pushback.

25.     The presentation used as part of that call included the following slide concerning

Company's total addressable market:



26.     The presentation used as part that call included the following slide concerning the CPM subcontractor usage fee:



27.     On February 3, 2014, Defendants held its 2014 Annual Meeting of Stockholders, which was webcasted live and made available for replay on the Company's website. The presentation used as part that call included the following slide concerning Company's total addressable market:



28.     On May 7, 2014, Defendants held an earnings release and conference call for the

quarter ended March 31, 2014 that was webcasted live and made available for replay on the

Company's website. During the call, Defendant Allin stated that:

> I would also like to highlight some recent developments. We successfully
> implemented our previously announced price increase for CPM subcontractor
> usage fees. This become effective on all new projects brought on CPM after
> February 1. As a reminder, it will take 18 to 24 months to realize the full revenue
> impact of the price increase. Ultimately, the increase will add an additional 2
> basis points to 3 basis points of revenue on subcontracted contract value. The
> increase contributed approximately 180,000 of cash revenue in the quarter, which
> gets spread over the estimated life of the contract for GAAP revenue purposes.
> We expect a modest impact on revenue from the price increase in 2014 with the
> main impact coming in 2015.

29.     During the same call, Defendant Sheehan stated the following concerning the

CPM subcontractor usage fee:

In the March quarter, the monetization rate of CPM subcontractor usage fee revenue decreased from an average of 8 basis points of subcontract value to 7 basis points.

30.     The presentation used as part of that call included the following slide concerning Company's total addressable market:



31.     The presentation used as part that call also included the following slide concerning the CPM subcontractor usage fee:

13

## Recent Highlights – Continuing to Execute our Strategy

**Strong Quarterly Results**

- **Year-over year revenue growth of 61%**
  - Organic revenue growth of 46%
  - $19.5 billion construction value added – 84% growth

**Operating Leverage**

- **Improving gross margin and EPS trajectory**
  - Gross margins improved from 77% in prior quarter to 79%
  - Adjusted EPS loss improved from ($0.19) in prior quarter to ($0.16)

**Enhanced Solutions**

- **Increased functionality of existing solutions**
  - LATISTA adds integrated business intelligence reporting solution
  - Continued integration of solutions and progress towards platform

**Pricing Power**

- **Implemented CPM price increase for sub usage fees**
  - Effective on all new projects after February 1
  - Adds 2 to 3 basis points of revenue on subcontracted contract value

©2014 Textura Corporation                    9                    ▪Textura

32.     On June 11, 2014, Defendants Allin and Sheehan made a presentation at the
William Blair Annual Growth Stock Conference held at the Four Seasons Hotel in Chicago,
Illinois, which was webcasted live and made available for replay on the Company's website. The
presentation included the following slide concerning Company's total addressable market:



33.     On August 6, 2014, Defendants held an earnings release and conference call for the quarter ended June 30, 2014, which was webcasted live and made available for replay on the Company's website. During the call, Defendant Allin stated that:

> We continue to see positive revenue impact from our previously announced price increase for CPM sub-contractor usage fees. This became effective on all new projects brought on CPM after February 1st this year. As a reminder, it will take 18 to 24 months to realize the full revenue impact of the price increase

34.     The presentation used as part that call included the following slide concerning Company's total addressable market:



35. The presentation used as part of that call also included the following slide concerning the CPM subcontractor usage fee:

## Recent Highlights – Continuing to Execute our Strategy

**Strong Quarterly Results**

- **Year-over-year revenue growth of 60%**
  - Organic revenue growth of 52%
  - Approximately $135 billion in construction value active on our solutions

**Operating Leverage**

- **Improving gross margin and EPS trajectory**
  - Gross margins improved from 79% in prior quarter to 80%
  - Adjusted EPS loss improved from $0.16 in prior quarter to $0.12
  - Turned cash flow positive for Q2 2014

**Growth Strategy**

- **Increased functionality of existing solutions**
  - Continued integration of solutions and progress towards platform
  - Launch of UK business and new strategy for Australasia

**Pricing Power**

- **Implemented CPM price increase for sub usage fees**
  - Effective on all new projects after February 1
  - Adds 2 to 3 basis points of revenue on subcontracted contract value

©2014 Textura Corporation      9      

36. The statements referenced in ¶¶ 15 through 35 above, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company did not charge general contractors and subcontractors as many basis points for using its CPM as it claimed; (2) the Company overstated its total addressable market; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## THE TRUTH BEGINS TO MATERIALIZE AND EMERGE

37. Throughout the Class Period, the truth of the Company's true financial performance, business prospects and financial condition emerged through partial disclosures.

38.     On December 26, 2013, analyst firm Citron Research published a report on Textura asserting that the Company's true financial performance, business prospects and financial condition have been overstated.

39.     The December 26th Citron Research report revealed, among other things, that the Company:

- initially lied about its revenue growth and subscriber churn rates to the SEC in its original registration statement, claims that were later withdrawn;

- omitted ties of Defendant Allin to Combined Professional Services, a publicly traded company listed on the OTC market whose promoters are now imprisoned; and

- failed to disclose revenues generated from referrals by a related party, Aon Risk Services Central, Inc., an affiliate of one of the Company's investors that holds a board seat and significant shares of the Company.

40.     On this news, shares of Textura fell $6.44 per share, or by approximately 17%, to close at $31.30 on December 26, 2013.

41.     On September 29, 2014, Citron Research published another report on Textura asserting that the Company's true financial performance, business prospects and financial condition have been overstated.

42.     The September 29th Citron Research report revealed, among other things, that:

- CPM contribution to total revenues is 5-6 basis points of construction value and not 15 basis point as the Company previously claimed;

- nearly all of the new subcontractors entering the CPM system are non-fee paying;

- the fees charged for the system are deeply discounted below any level the Company has disclosed to investors; and

- the Company's total addressable market is less than $1/10^{th}$ of what the Company's claim.

43. On this news, shares of Textura fell $2.51 per share, or over 8%, to close at $25.71 on September 29, 2014.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Textura during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Textura's common stock was actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Textura or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Textura; and

    (c)    to what extent the members of the Class have sustained damages, and the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

50.    At all relevant times, the market for Textura common stock was an efficient market for the following reasons, among others:

(a)    The Company's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Textura filed periodic public reports with the SEC and the NYSE;

(c)    Textura regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Textura was followed by several securities analysts employed by a major brokerage firm who wrote reports that were distributed to the sales force and certain customers of his/her brokerage firm during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(e)    Unexpected material news about Textura was rapidly reflected and incorporated into the Company's stock price during the Class Period.

51.    As a result of the foregoing, the market for Textura's common stock promptly digested current information regarding Textura from all publicly available sources and reflected such information in Textura's stock price.  Under these circumstances, all purchasers of Textura's common stock during the Class Period suffered similar injury through their purchase of Textura's common stock at artificially inflated prices, and a presumption of reliance applies.

## LOSS CAUSATION/ECONOMIC LOSS

52.     The market for Textura common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, Textura securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Textura securities relying upon the integrity of the market price of Textura securities and market information relating to Textura, and have been damaged thereby.

53.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Textura securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

54.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Textura's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Textura and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing Textura securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company

were revealed to the market, the inflation in the price of Textura common stock was removed and the price of Textura common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
### *AFFILIATED UTE*

55.     Neither Plaintiff nor the Class need prove reliance - either individually or as a class because under the circumstances of this case, which involves a failure to disclose the material related party transactions described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the *United States Supreme Court in Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## NO SAFE HARBOR

56.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of Textura who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Textura's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

59.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Textura's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Textura as specified herein.

61.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Textura's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Textura and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Textura's securities during the Class Period.

62.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware

of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Textura's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Textura's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Textura's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Textura's securities during the Class Period at artificially high prices and were or will be damaged thereby.

65. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Textura's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Textura's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

66. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

68. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of Textura within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control, and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.     As set forth above, Textura and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

73.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

74.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 7, 2014                                   Respectfully submitted,

                                                        **HEFFNER HURST**
                                                        /s/ Matthew T. Heffner
                                                        Matthew T. Heffner
                                                        30 North LaSalle Street
                                                        Twelfth Floor
                                                        Chicago, Illinois  60602
                                                        Telephone: (312) 346-3466
                                                        Fax: (312) 346-2829
                                                        mheffner@shhllp.com

                                                        **THE ROSEN LAW FIRM, P.A.**
                                                        Laurence M. Rosen, Esq.
                                                        Phillip Kim, Esq.
                                                        Kevin Chan, Esq.
                                                        275 Madison Ave, 34th Floor
                                                        New York, NY  10016
                                                        Telephone: (212) 686-1060

Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
kchan@rosenlegal.com

Counsel for Plaintiff