IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED KELSEY, individually and on behalf of all others similarly situated,  )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>PATRICK J. ALLIN, JILLIAN SHEEHAN, and  )<br>TEXTURA CORPORATION,  )<br>)<br>Defendants.  ) | Case No. 14 C 7837<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fred Kelsey, individually and on behalf of others similarly situated, has brought a two count putative class action complaint against defendant Textura Corporation, its Chief Executive Officer ("CEO") and Chairman, Patrick J. Allin, and its Executive Vice-President and Chief Financial Officer ("CFO") Jillian Sheehan. Count I alleges that defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Count II, brought only against Allin and Sheehan, alleges control person liability under Section 20(a) of the Exchange Act. 15 U.S.C. § 78t(a). Defendants have moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). Plaintiff has moved to strike a portion of one affidavit submitted in support of defendants' motion (the "Fuoss Affidavit"). For the reasons described below, the court grants in part and denies in part defendants' motion to dismiss. Plaintiff's motion to strike is denied as moot.

**BACKGROUND**[1]

Plaintiff purports to bring this complaint on behalf of a class of purchasers who purchased Textura Corporation stock between June 7, 2013, when Textura launched its initial public offering ("IPO") and September 29, 2014. Plaintiff claims that defendants are liable under Sections 10(b) and 20(a) for alleged misstatements and/or materially misleading statements in Textura's SEC filings and presentations to analysts. These misstatements, according to plaintiff, were revealed in scathing reports issued by noted short seller Citron Research, which admittedly held a short position in Textura at the time it issued the reports. Citron issued three reports about Textura on December 26, 2013, January 7, 2014, and September 29, 2014, the last day of the purported class period. According to plaintiff, the reports revealed that Textura had omitted material information from its SEC filings about Allin's background, failed to report certain transactions as "related transactions" in its financial statements, and mislead analysts with respect to the basis points it earned from usage fees, by

---

[1] The facts in this background section are taken from allegations of the amended complaint, which are presumed true for purposes of resolving defendants' motion to dismiss. Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). In addition, although a court normally should not consider extrinsic evidence without converting a motion to dismiss into a summary judgment motion, the court may consider documents referenced in the complaint and central to plaintiff's claims, as well as matters of public record. Hecker v. Deere & Co., 556 F.3d 575, 582-83 (7th Cir. 2009); Gen. Elec. Cap. Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997). Defendants have attached a number of documents to their motion papers, mostly SEC filings and other public documents, some of which are relied on in this background section. The documents are submitted through affidavits of one of defendants' attorneys, Ryan Fuoss who, for the most part, simply authenticates them as publically available. As noted, plaintiff has moved to strike Fuoss' initial affidavit because it also contains a summary chart, prepared by him, of the information contained in sone of the public filings. Because the court's resolution of the motion to dismiss the complaint does not require consideration of the summary chart, the motion to strike is denied as moot.

failing to disclose that the fees were subject to a "specific" maximum cap of $1,450 initially, later raised to $2,500 each.

According to plaintiff, in its initial June 7, 2013 IPO, Textura sold five to seven million shares of its stock at an alleged artificially inflated price, raising over $80.2 million. Textura insiders sold over $27.8 million in Textura securities. Allin sold 263,825 shares, resulting in over $7.5 million in proceeds. Sheehan sold 43,026 shares, netting over $1.3 million in proceeds.

Textura was founded in 2004 "as a business software company providing cloud-based software to the commercial construction industry." It has a number of products, but its first and best-selling product is called its Construction Payment Management System ("CPM"). CPM is an electronic invoicing and payment system that integrates all billing, progress claims, lien waiver collections, statutory declarations, sub-tier waivers, compliance management, and payments, into a seamless work flow. CPM accounted for 62.8 percent, 75 percent, and 93 percent of Textura's revenue in fiscal years 2013, 2012 and 2011, respectively. CPM revenue is generated in two forms: (1) a fee paid by the general contractor; and (2) usage fees paid by subcontractors. Usage fees account for 75 percent of the CPM revenue.

In its SEC filings during the proposed class period, Textura indicated that it had incurred "significant losses" in each reporting period since its inception. It reported net losses of $18.9 million for the fiscal year ended September 30, 2011, $18.8 million for 2012; and $39.6 million for 2013. As of December 31, 2014, Textura had an accumulated deficit of $209.4 million. After switching to a calendar year system, it reported a net loss of $6.7 million for the three

month period ending December 31, 2013, and a loss of $24.7 million for the 2014 calendar year. Textura continually reported that "we do not expect to be profitable for the foreseeable future."

**DISCUSSION**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a Rule 12(b)(6) motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because plaintiff's § 10(b) claims sound in fraud, they are also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaint must provide "the who, what, when, where and how" of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

In addition to Rule 9(b), to check against pleading abuses in private securities fraud suits, the PSLRA has further heightened the pleading requirements. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314-15 (2007). Under the PSLRA, the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and

belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The PSLRA also imposes a substantially higher standard of pleading scienter. The complain must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind is an "intent to deceive, manipulate or defraud." Higginbotham v. Baxter Int.'l Inc., 495 F.3d 753, 756 (7th Cir. 2007). For an inference to be "strong," it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

1. **Count I - Section 10(b) and Rule 10b-5**

Count I alleges that defendants violated § 10(b) of the Exchange Act and SEC Rule 10b-5. Section 10b, 15 U.S.C. § 78j(b), makes it unlawful for any person:

> To use or employ, in connection with the purchase or sale of any security registered as on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of [any SEC rule or regulation].

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, makes it unlawful for any persons:

> (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

To state a claim under Section 10(b) and Rule 10b-5, plaintiff must allege: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) 'economic loss';

6

and (6) 'loss causation', i.e., a causal connection between the material misrepresentation and the loss." Dura Pharms. Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (internal citations omitted).

### a. Biographical Information

Plaintiff first claims that defendants published a false and materially misleading biography of defendant Allin in the final prospectus filed with the SEC for the IPO issued on June 7, 2013. The biography stated:

> Patrick J. Allin has been our Chairman and Chief Executive Officer since co-founding our company in September 2004. Prior to co-founding Textura, Mr. Allin served as a Senior Client Delivery Partner, Chief Operating Officer and Chief Financial Officer of the Global Consulting Practice at PricewaterhouseCoopers, LLP. Earlier in his career, Mr. Allin served in a number of executive positions, including President, at Moore Business Forms North America and as an audit partner at PriceWaterhouse. Mr. Allin, holds a Bachelor of Commerce Degree in commerce and economics from the University of Toronto and is a Canadien Chartered Accountant. Mr. Allin brings to our board of directors extensive experience with Textura's business operations as a founder of our company.

The identical biography was published in a registration statement signed by Allin and Sheehan filed with the SEC on September 19, 2013, a final prospectus filed on September 20, 2013, and a proxy statement filed on January 3, 2014.

Plaintiff alleges that the biography was misleading because it failed to state that immediately before starting Textura, Allin was CEO and Acting CFO of Patron Systems, Inc. ("Patron"), and was involved with "notorious convicted stock fraudsters, including Thomas Prousalis – the chief legal architect behind fraudulent merger deals sold by "boiler room firm Stratten Oakmont, Inc." Stratten Oakmont was co-founded by convicted fraudster Jordan Belfort, the self-proclaimed "Wolf of Wall Street." According to plaintiff, had the biography

revealed this information, investors would have learned of Allin's involvement with other criminal stock promoters as well.

Additionally, according to the complaint, during Allin's tenure at Patron, he was accused by Patron's auditor, Grant Thorton, LLP, of providing it false information. Grant Thorton would later announce that it could no longer rely on Patron's representations. Plaintiff alleges that once Citron revealed these facts, the price of Textura stock fell, damaging plaintiff and the class members.

SEC regulations require only a brief description in initial public offering materials and proxy statements of the "business experience during the past five years" of each director and executive officer. Specifically, Reg. S-K, Item 401(e), 17 C.F.R. 229.401(e), provides:

> (1) Background. Briefly describe the business experience during the past five years of each director, executive officer . . ., including: each person's principal occupations and employment during the past five years; the name and principal business of any corporation or any organization in which such occupations and employment were carried on and whether such corporation or organization is a parent, subsidiary or other affiliant of the registrant. In addition, for each director . . ., briefly discuss the specific experience, qualifications, attributes or skills that led to the conclusion that the person should serve as a director . . . . If material, this disclosure should cover more than the past five years, including information about the person's particular areas of expertise or other relevant qualifications.

Defendant correctly argues that because Allin had worked for Textura for over eight years at the time of the IPO, and Textura was relying on his experience with it for the decision that he should serve as a director, it had no duty to disclose any of Allin's business experience prior to Textura. And, obviously, Textura was not relying on his experience with Patron to qualify him as a director. Thus, the court concludes that Textura could have complied with the regulation had it simply described Allin's experience with Textura.

8

Defendants, however, chose to add more of Allin's professional background to the biography. This included the following language: "Prior to co-founding Textura, Mr. Allin served as a Senior Client Delivery Partner, Chief Operating Officer and Chief Financial Officer of the Global Consulting Practice at PricewaterhouseCoopers, LLP," and then set out most, if not all, of Allin's other business experience, except for his tenure at Patron, which immediately preceded Textura. The way the biography was worded suggests that Allin was at PricewaterhouseCoopers immediately before starting Textura. The failure to list his immediately preceding position when it is the lone "negative" in is background suggests an intent to deceive.

Rule 10b-5 makes it unlawful "to omit to state a material fact necessary in order to make the statements made in light of the circumstances in which they were made not misleading." Having elected to disclose Allin's business experience beyond five years and prior to his eight years with Textura, defendants had a duty to do so in a manner that was not misleading. "If one speaks, he must speak the whole truth." Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1331 (7th Cir. 1995).

Defendants' suggestion that Allin's affiliation with Patron is not material is unpersuasive. An omission renders a statement materially misleading when it creates an "impression of a state of affairs that differs in a material way from the one that actually exists." Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir. 2002). Defendants' omission of Allin's time with Patron certainly accomplished that. Having touted Allin's prior experience, defendants had a duty to disclose all of the experience, including any negative experience. The court rejects defendants' argument that they did not "tout" Allin's prior experience. Having convincingly

argued that it was not required to include any of Allin's prior experience, there could be no other reason for then deciding to do so.

Finally, the court concludes that plaintiff has alleged facts giving rise to a strong inference of scienter. If, as defendants argue, the key question is "whether they knew or should have known that their failure to disclose those facts presented a danger of misleading buyers or sellers," City of Dearborn Heights Act 345 Police & Fire Retirement System v. Waters Corp., 632 F.3d 751, 758 (1st Cir. 2011), the answer is obviously yes. The inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.

Consequently, the court concludes that Count I states a claim based on defendants' failure to include Allin's affiliation with Patron in his biography.

### b. Related Transactions

Plaintiff next claims that defendants violated Section 10(b) and Rule 10b-5 by failing to adequately disclose "material related party transactions." According to plaintiff, generally accepted accounting procedures ("GAAP"), and its Statement of Financial Accounting Standards ("SFAS"), and SEC Reg. S-K required Textura to disclose all material related transactions. Plaintiff alleges that in 2010, Textura entered into an amended referral agreement with Aon Risk Services Central, Inc. ("ARSC"). ARSC is an affiliate of Aon, plc. Aon, plc previously owned more than five percent of Textura common stock. Pursuant to a voting agreement, Aon, plc designated Gregory J. Besio as a Textura Director, and he has served as such since June 2011. Besio is also Executive Vice-President and Chief Human Resources Officer at Aon, plc.

The referral agreement required Textura to pay a referral fee to ARSC in exchange for customer referrals. Plaintiff admits that Textura disclosed the existence of the referral agreement, but claims that it never disclosed the dollar amount of sales generated through the referral agreement, and did not specifically and clearly disclose the amount of any referral fees paid. According to plaintiff, the dollar amount of revenue generated from these referrals was material because sales generated through the agreement had smaller margins and were less profitable than sales to other customers. The complaint, however, provides no factual support for that statement.

Under GAAP, related party transactions are those "between an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its affiliates. SFAS No. 57, ¶ 1. Affiliates include any company that is under common control or management with the public company. SFAS No. 57, ¶ 24(a, b).

Reg. S-K, item 404(a), 17 C.F.R. § 229.404(a), requires the description of any transaction in which the registrant is a participant, the amount involved exceeds $120,000, and any related person had or will have a direct or indirect material interest. Aon, plc was a related person up to the IPO, because it owned 5% of Textura stock. After the IPO, however, it owned less than 5% and thus no longer qualified as a related party. Consequently, after the IPO (which includes the vast majority of the alleged reporting violations) Textura had no obligation to report the referral agreement with ARSC as a related party transaction. Plaintiff argues that Aon, plc was a related party at all relevant times because it had designated Besio as a director. As defendants point out, however, nothing in the regulations' definition of related person includes a director's employer. 17 C.F.R. § 229.404(a).

Additionally, plaintiff complains that defendants did not disclose the sales generated from the referral agreement. While Textura might have been obligated to disclose the gross fees paid to ARSC for referrals, the sales generated came from its individual contracts with the leads ARSC provided. Textura's contracts with those entities do not qualify as related party contracts under the regulation.

As defendants point out, Textura disclosed all of the terms of its contract with ARSC and explained the net impact the agreement had on its financial statements. Nothing in GAAP or the regulation required Textura to provide a detailed breakdown of all of the components or each item of compensation that ARSC paid or received. The purpose of the regulation is simply to ensure that the company's financial dealings with insiders are disclosed. See Unite Here v. Cintas Corp., 2006 WL 2859279 at *5 (S.D. N.Y. Oct. 11, 2006). Textura's disclosures did just that, and plaintiff has failed to allege facts that would demonstrate that the undisclosed information was material in any respect.

In addition, plaintiff has also failed to allege facts giving rise to a "strong inference" that defendants acted with scienter by not disclosing more information about the referral fees. Indeed, the complaint lacks any allegation of scienter with respect to the "related transaction" claims except to allege that defendants knew the amount of fees paid and revenue generated but failed to disclose them. There are no facts alleged to support a cogent inference that the defendants acted with an intent to deceive, manipulate or defraud. Consequently, the court concludes that plaintiff's "related transaction" claims fail to state a claim under PLSRA and Fed. R. Civ. P. 12(b)(6).

## c. Subcontractor Usage Fees

Finally, plaintiff claims in Count I that Textura failed to adequately disclose the existence of a maximum cap on subcontractor usage fees. In particular, the complaint alleges that on December 3, 2013, Allin and Sheehan made a presentation at the 2013 Credit Suisse Technology Conference at which they touted a price increase that would add two to three basis points to the usage fee rate of seven to eight basis points. Again, on January 14, 2014, Allin and Sheehan presented a Power Point presentation at the Sixteenth Annual Needham Growth Conference and claimed that Textura earned 15 basis points (or 15%) of the full value of a subcontractor contract. According to plaintiff, defendants failed to disclose that usage fees were capped at $1,450 initially and then $2,500 during the purported class period.

Textura did disclose that subcontractor usage fees were subject to both a minimum and maximum amount. Plaintiff thus appears to be claiming that Textura should have disclosed the exact cap amounts. Defendants argue that this information was publically available, but even if it was not, plaintiff has again failed to allege that defendants acted with the requisite scienter. Once again, the section of the complaint alleging that defendants misleadingly overstated the revenue generated from CPM contains no allegations relating to defendants' state of mind or suggesting that they acted with intent to deceive, manipulate, or defraud. And, as defendants point out, plaintiff's argument "that Defendants were motivated to misrepresent Textura's revenue derived from CPM is demonstrated by the approximately $19 million in proceeds Allin and Sheehan reaped in selling Textura stock as well as their participation as selling stockholders in Textura's $36.6 million secondary offering" is wholly without merit. The secondary offering was on September 25, 2013, and complete well before any of the statements plaintiff challenges.

Consequently, the court concludes that plaintiff has failed to state with particularity facts giving rise to a strong inference that defendants acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2). Plaintiff's claim based on failing to disclose CPM (revenue) thus fails under the PLSRA and Fed. R. Civ. P. 12(b)(6).

**2.     Count II - Control Person Liability**

Count II alleges control person liability against defendants Allin and Sheehan. All parties recognize that a control person claim under § 20 of the Exchange Act must be based on an underlying violation of the securities laws or the rules promulgated under them. Thus, Count II states a claim based on defendants' failure to fully disclose Allin's affiliation with Patron, and fails in all other respects.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied with respect to plaintiff's claim based on defendant's failure to disclose Allin's affiliation with Patron, and granted in all other respects. Plaintiff is directed to file an amended complaint conforming to this opinion by March 24, 2016. Defendants are directed to answer by April 14, 2016. The parties are to file a joint status report on the court's form by April 21, 2016. This matter is set for a report on status on April 28, 2016, at 9:00 a.m.

**ENTER:     March 2, 2016**

_____
**Robert W. Gettleman
United States District Judge**